```
              UNITED STATES DISTRICT COURT
           SOUTHERN DISTRICT OF WEST VIRGINIA
                       AT CHARLESTON
```

**CONTINENTAL CASUALTY COMPANY,**

    Plaintiff,

v.                                    Civil Action No.: 2:00-0260

**AMERICAN HOME ASSURANCE COMPANY
and NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH, P.A.**

    Defendants.

<u>MEMORANDUM OPINION AND ORDER</u>

    Pending are the objections of plaintiff Continental Casualty Company ("Continental") to a memorandum order ("appealed order") entered by the Honorable Mary E. Stanley, United States Magistrate Judge.

    As discussed more fully below, the appealed order granted in part and denied in part a motion to compel filed by defendants American Home Assurance Company and National Union Fire Insurance Company of Pittsburgh, P.A. (collectively referred to as "AIG").[1]  In response to the motion to compel, Continental initially produced a privilege log listing 573 documents.  It later streamlined the submission to 245 documents.  Ultimately,

---

[1] Inasmuch as the magistrate judge ruled upon the motion to compel, and the court will address at a later time the scheduling concerns reflected in the motion to compel, the Clerk is directed to terminate the motion.

after the parties conferred further, only 23 documents were presented to the magistrate judge for <u>in camera</u> review.  Of those 23 documents, the magistrate judge, in a comprehensive and thorough opinion, ordered that documents 81, 93, 145, 146, and 158 be disclosed.  The objections by Continental relate only to document 81, which consists of the handwritten notes of Karen Campbell, the vice president of claims for Continental.  The notes were taken during a December 5, 1997, meeting with counsel and some fellow Continental executives.

I.

A.  Proceedings Before the Magistrate Judge and the Appealed Order

The factual and procedural background of this civil action is recited elsewhere in detail.  <u>Continental Cas. Co. v. American Home Assurance Co.</u>, No. 2:00-260 (S.D. W. Va. Jul. 9, 2002); <u>Continental Cas. Co. v. American Home Assurance Co.</u>, No. 2:00-260 (S.D. W. Va. Apr. 11, 2003)  A familiarity with the discussion found in those two opinions is assumed.

On March 20, 2003, the magistrate judge held a hearing concerning the 23 documents, which had previously been submitted

by Continental for _in_ _camera_ review.  During the hearing, the magistrate judge conducted an _ex_ _parte_ examination of Campbell, focusing on the creation and meaning of document 81.

　　　　The appealed order initially found the opening and the closing ("Recommendations") portions of document 81 protected by the attorney-client privilege.  The magistrate judge further concluded that those portions of document 81 subject to disclosure constituted fact work product for which AIG had shown substantial need and resultant undue hardship if disclosure was not ordered.  As elaborated upon more fully _infra_, the magistrate judge additionally found that the "Memorandum Order entered July 9, 200[2], the testimony of attorney McGowan, and the non-privileged portion of privilege log document 81," constituted a _prima_ _facie_ showing by AIG that warranted application of the crime-fraud exception.  Based upon that finding, the magistrate judge then directed the disclosure of document 81 in its entirety.  (App. Ord. at 41; 43 ("'[T]he entirety of document 81 . . . bear[s] a close relationship to the alleged scheme to commit fraud, and [is] . . . subject to the crime-fraud exception.").

B.   Document 81

Document 81 is described in the privilege log as follows:

> [Campbell's] [h]andwritten notes relating to conversation with Clark Walter; Roger Morris; Tom Flaherty, Esq.; Rebecca L. Ross, Esq.; re: strategy relating to Harris claim.

(Ex. A., App. Ord. at 1).  At the time of the meeting, Walter was Director of Continental's Corporate Media Relations section. Morris was serving as the Assistant Vice President of the same section.  Thomas Donnelly, who attended but is not listed as such in the privilege log entry, was serving at the time as Continental's Group Vice President of Claims.  Ross and Flaherty were both lawyers representing Continental.

Campbell's notes involve a meeting that she had with the aforementioned individuals concerning the threatened filing of a second lawsuit ("Harris II") by William O. Harris, Jr.[2]  The Harris II lawsuit was directed against Continental, Steptoe & Johnson, and individual members of that firm.

In discussing document 81, the appealed order states as

---

[2]On July 24, 1987, Harris was convicted of sexual assault. On November 3, 1995, his conviction was vacated after DNA testing excluded him as the perpetrator.  On November 13, 1995, he instituted a civil action ("Harris I") against various state entities arising out of his wrongful conviction and incarceration.

4

follows:

> The court notes that the privilege log does not accurately describe most of document 81.  A substantial portion of the notes is a recitation of the substance of client and non-client <u>witness statements</u> concerning the facts of the settlement of Woodall's claim in 1992, the writing and distribution of the July 29, 1992 letter, what was known in 1992 and what was not known then.  Only the opening and closing sections of the notes pertain to the lawsuit threatened by Mr. Harris, and constitute confidential attorney-client communications concerning that potential litigation.

(App. Ord. at 12 (emphasis added)).

During the <u>in camera</u> hearing, Ms. Campbell appeared uncertain about some of the notations she made in the portion of document 81 that was ordered disclosed, commenting at one point as follows:

> I'm not sure who counsel may have developed the information through.  It looks to me as though it's sort of a composite of information that counsel had developed during the course of developing information for litigation.

(Sealed Trans. at 9).  The characterization appears appropriate, inasmuch as the magistrate judge referred further to the "witness statements" underscored in the preceding, quoted paragraph of the appealed order as (1) "a summary of witnesses' statements," (2) "Mr. Flaherty's report of the witnesses' statements" and (3) "every witness interviewed by Mr. Flaherty as to the facts of events in the summer and fall of 1992."  (<u>Id.</u> at 27-28).  The magistrate judge further opined as follows:

> Any statements by witnesses to the decision to restrict

5

>   distribution of and access to the July 29, 1992 letter
>   are critical evidence of the alleged civil conspiracy.

(<u>Id.</u>)

As noted, prior to her analysis of the crime-fraud exception, the magistrate judge concluded that a portion of document 81 was not protected by the attorney-client privilege inasmuch as it was essentially found to be a mere recitation of facts. The balance of document 81, consisting of the opening and closing sections of the document, were found to be privileged attorney-client communications concerning the potential <u>Harris II</u> litigation.

Respecting the crime-fraud analysis, however, the magistrate judge observed as follows:

>   The Court concludes, based on the [July 9, 2002]
>   Memorandum Order, the testimony of attorney McGowan,
>   and the entirety of privilege log document 81, that
>   there is <u>prima</u> <u>facie</u> evidence that Continental
>   participated in a civil conspiracy with the State of
>   West Virginia and Continental's counsel to withhold the
>   July 29, 1992 letter from any distribution or
>   publication (including to AIG).
>
>   The conspiracy began in July, 1992, and continued
>   through the negotiation and execution of the [March 19,
>   1997] Novation Agreement, at least until the letter was
>   disclosed in early June, 1997 (and perhaps longer).

(<u>Id.</u> at 42). The substance of the conspiracy was described as follows:

>   The significance of the [July 29, 1992] letter is its
>   strong suggestion that Fred Zain's laboratory work was

6

> purposefully faulty and his testimony was knowingly false, in Woodall's case <u>and in other cases</u>. The concerns expressed in McGowan's letter to Continental were harm to the State Police, <u>claims which could be filed with Continental</u>, a "media circus," and "damage control." A subsequent letter to the Kanawha County Prosecuting Attorney, the State Police audit of Zain's work, and other efforts which minimized the impact of the revelation concerning Fred Zain, served to undermine any suggestion that there were other cases affected by Zain's conduct. AIG claims that it was defrauded by Continental when Continental failed to inform it of the July 29, 1992 letter and the strong possibility of other claims being made against the State of West Virginia and others.

(<u>Id.</u> at 42-43) (emphasis in original).

After reviewing the privileged documents, the magistrate judge determined that, "at a minimum, those documents dated on or prior to the publication of the July 29, 1992 letter, and the entirety of document 81, bear a close relationship to the alleged scheme to commit fraud, and are subject to the crime-fraud exception." <u>Id.</u> at 43.

C.  The Appeal

Continental alone challenges the appealed order. It does so on narrowly drawn grounds. As noted, it objects only to (1) the magistrate judge's use of federal common law instead of

7

West Virginia law in analyzing the crime-fraud exception[3]; (2) the disclosure of any portion of document 81, and (3) the conclusion that a *prima* *facie* showing exists to support application of the crime-fraud exception.[4]  Regarding the second contention, Continental asserts that document 81 is subject to the attorney-client privilege inasmuch as it consists of contemporaneous notes of a conversation between Continental agents and the entity's lawyers.

Regarding the third contention, Continental asserts, *inter* *alia*, that the crime-fraud exception only applies to abrogate the attorney-client privilege if the communication was

---

[3]Continental asserts that the federal and West Virginia formulations of the crime-fraud exception differ.  It contends that the West Virginia formulation is narrower than its federal counterpart, with the former requiring a showing of fraud on the court and the latter requiring only fraud in general.

[4]There are additional assignments of error by Continental concerning document 81 relating to the analysis in the appealed order of the work product doctrine and the propriety of the *in camera* examination of document 81 conducted by the magistrate judge for purposes of the crime fraud exception.  In view of the court's ruling herein, these additional assignments of error need not be addressed.
 Continental also contends that the appealed order "makes broad and conclusory findings regarding the ultimate merits of certain issues AIG must prove" in order to prevail in this litigation.  The ultimate adjustment of the parties' rights and obligations is committed to the jury where genuine issues of material fact are present or, otherwise, by the court as a matter of law.  Any conclusions arguably reached by the magistrate judge concerning these ultimate issues are immaterial and need not be stricken.

in furtherance of an ongoing or future crime or fraud.  Inasmuch as the alleged fraudulent scheme identified by the magistrate judge could not extend past the June 6, 1997, publication of the McGowan letter, Continental asserts that the crime-fraud exception in no way affects any privilege attached to document 81, which was created six months later on December 5, 1997.

## II.

Federal Rule of Civil Procedure 72(a) governs the instant appeal and provides as follows:

> When a pretrial matter not dispositive of a party's claim or defense is referred to a magistrate judge to hear and decide, the magistrate judge must promptly conduct the required proceedings and, when appropriate, issue a written order stating the decision. A party may serve and file objections to . . . [a magistrate judge's non-dispositive ruling] . . . . [b]ut may not assign as error a defect in the order not timely objected to.  The district judge in the case must . . . modify or set aside any part of the order that is clearly erroneous or is contrary to law.

Id.  Similar to the manner in which the matter would be addressed by an appellate court, the court reviews both the privilege and crime-fraud determinations similarly. See, e.g., In re Grand Jury Subpoena John Doe, No. 05GJ1318, 584 F.3d 175, 183 (4th Cir. 2009)(noting clear error review for findings of fact underlying attorney-client privilege claims); In re Grand Jury Subpoena, 341

9

F.3d 331, 334 (4th Cir. 2003) (noting the same and further noting that the application of underlying legal principles is reviewed de novo); Better Gov't Bureau, Inc. v. McGraw (In re Allen), 106 F.3d 582, 601 (4th Cir. 1997) (same); United States v. Ruhbayan, 406 F.3d 292, 299 (4th Cir. 2005)(noting in a crime fraud setting an appellate court "review[s] a trial court's factual findings for clear error, and . . . its application of the legal principles de novo.").

By analogy, the matters appealed, to the extent they involve factual determinations, are reviewed for clear error. The balance of the assigned errors are evaluated to determine if they are contrary to law.

### III.

A.   Attorney-Client Privilege

"It is generally true that the Federal Rules of Evidence require a district court sitting in diversity to defer to applicable state rules on presumptions, privileges, and competency."  Hottle v. Beech Aircraft Corp., 47 F.3d 106, 107 n. 1 (4th Cir. 1995); see also Fed. R. Evid. 501; Ashcraft v.

Conoco, Inc., 218 F.3d 282, 286 n. 5 (4th Cir. 2000) ("[T]he availability of an evidentiary privilege is governed by the law of the forum state."). Inasmuch as the court previously found in its July 9, 2002, memorandum opinion and order that West Virginia law governs this dispute, the privilege analysis is controlled by West Virginia law.

The Supreme Court of Appeals of West Virginia recently restated its general formulation of the attorney-client privilege, quoting the drafter and leading commentator on the West Virginia Rules of Evidence: "'[C]onfidential communications made by a client or an attorney to one another are protected by the attorney-client privilege." State ex rel. Marshall County Com'n v. Carter, No. 35272, --- W. Va. ---, --- , --- S.E.2d ---, --- n.4 (Jan. 29, 2010) (quoting Franklin D. Cleckley et al., Litigation Handbook on West Virginia Rules of Civil Procedure § 26(b)(1) (2d ed. 2006)(footnote omitted)).

The proponent of the privilege is required to demonstrate three things in order to claim its protection:

> (1) both parties must contemplate that the attorney-client relationship does or will exist; (2) the advice must be sought by the client from the attorney in his capacity as a legal advisor; [and] (3) the communication between the attorney and client must be intended to be confidential.

Syl. pt. 7, State ex rel. USF&G v. Canady, 194 W. Va. 431, 433,

460 S.E.2d 677, 679 (1995); see also Carter, No. 35272, --- W. Va. ---, ---, --- S.E.2d ---, --- n.4 (Jan. 29, 2010).

From a policy perspective, the attorney-client privilege supports the judicial and adversarial process by encouraging "'"the promotion of full and frank discourse between attorney and client so as to insure sound legal advice or advocacy."'"  State of West Virginia ex rel. Allstate Ins. Co. v. Madden, 215 W. Va. 705, 713, 601 S.E.2d 25, 33 (2004) (quoting State ex rel. United Hosp. Ctr., Inc. v. Bedell, 199 W. Va. 316, 326, 484 S.E.2d 199, 209 (1997) (quoting syl. pt. 11, in part, Marano v. Holland, 179 W. Va. 156, 366 S.E.2d 117 (1988) (additional citation omitted)); see Upjohn Co. v. United States, 449 U.S. 383, 389 (1981); Kessel v. Leavitt, 511 S.E.2d 720, 807 (1998) ("The attorney-client privilege is a widely recognized and solemnly respected privilege, the purpose of which is to protect confidential communications between a client and his/her counsel.").

Although the attorney-client privilege is necessary, it has a corresponding negative impact upon the judicial process as well, namely, negating access to every person's evidence and sometimes interfering with a fact finder's ability to ascertain the truth.  See Maclay v. Jones, 208 W. Va. 569, 575, 542 S.E.2d 83, 89 (2000) (citing case law observing that "'privileges are

strongly disfavored'" "'[b]ecause of their interference with truthseeking'") (quoted authority omitted); see also United States v. Nixon, 418 U.S. 683, 710 (1974) (stating that "these exceptions to the demand for every man's evidence are not lightly created nor expansively construed, for they are in derogation of the search for truth . . . ."); see also Canady, 460 S.E.2d at 684 ("As the attorney-client privilege . . . may result in the exclusion of evidence which is otherwise relevant and material and are antagonistic to the notion of the fullest disclosures of the facts, courts are obligated to strictly limit the privilege and exception to the purpose for which they exist.").

During the December 5, 1997, meeting between the lawyers for Continental and that entity's employees, Campbell recorded the facts and witness accounts discussed, and legal advice given, concerning the impending Harris II litigation. The mere inclusion of facts within the four corners of document 81 is certainly not fatal to the privilege claim. As noted in State ex rel. United Hosp. Center, Inc. v. Bedell, 199 W. Va. 316, 326, 484 S.E.2d 199, 209 (1997),

> the attorney-client privilege "'extends only to communications and not to facts. A fact is one thing and a communication concerning that fact is an entirely different thing. The client cannot be compelled to answer the question, "What did you say or write to the attorney?" but may not refuse to disclose any relevant fact within his knowledge merely because he

13

>     incorporated a statement of such fact into his
>     communication to his attorney.'"

Id. (emphasis in original) (quoting Canady, 194 W.Va. at 442, 460 S.E.2d at 688 (quoting Upjohn Co. v. United States, 449 U.S. 383, 395-96 (1981) (other quoted authority omitted)).

The factual material included within document 81 is an integral part of the overall communication. The net effect of compelling the production of the communication that included the factual material is equivalent to commanding Continental to answer the question "What did your attorney say to you?" For this reason, and having reviewed the parties' briefs, their respective position letters, the excerpts from McGowan's depositions, the July 9, 2002, memorandum opinion and order, the appealed order, the transcript of Campbell's ex parte testimony, and document 81, the court concludes that the attorney-client privilege shields document 81 in its entirety.

B.  Crime-Fraud Exception.

The inquiry does not end with the conclusion that document 81 is privileged inasmuch as the magistrate judge further concluded that the crime-fraud exception applies. Madden, 215 W. Va. at 716, 601 S.E.2d at 36 ("Once the

14

attorney-client privilege or the work product doctrine has been found to apply to insulate communications from discovery, the protections afforded thereby nevertheless may be overcome through application of the crime-fraud exception.").

The supreme court of appeals clarified the scope and application of the crime-fraud exception in Madden. See State ex rel. Erie Ins. Property & Cas. Co. v. Mazzone, 220 W. Va. 525, 533, 648 S.E.2d 31, 39 (2007) ("This Court . . . adopted the crime-fraud exception in syllabus point eight of . . . Madden . . . .").[5] Despite Continental's contention to the contrary, there

---

[5]The magistrate judge did not have the benefit of the Madden decision inasmuch as it was issued after the appealed order.

The author of the majority opinion in Madden, Justice Davis, noted that the supreme court of appeals' precedent on the crime fraud exception, along with that from other courts, was somewhat in disarray:

> While the crime-fraud exception is widely recognized, much confusion has persisted as to its precise application. See . . . [State ex rel. Medical Assurance of West Virginia, Inc. v. Recht, 213 W. Va. 457, 472, 583 S.E.2d 80, 95 (2003)] (Davis, J., concurring) (commenting on the lack of uniformity among courts that have addressed the application of the crime-fraud exception). Compounding this uncertainty are the recent decisions of this Court extending application of the attorney-client privilege and the work product doctrine to first- and third-party bad faith cases.

Madden, 215 W. Va. at 717, 601 S.E.2d at 37. The analysis undertaken by Justice Davis is deemed by this court to be the authoritative, present understanding of the exception in West

(continued...)

15

is no material difference between the West Virginia and federal formulations of the exception. The conclusion is supported by the fact that Madden, in multiple instances, cites and relies upon United States v. Zolin, 491 U.S. 554, 563 (1989), a primary federal source discussing the contours and application of the crime-fraud exception. See, e.g., Madden, 215 W. Va. at 718, 601 S.E.2d at 38 ("To facilitate the application of th[e] standard in future cases, we reiterate the tenets of Zolin set forth above . . . .").

In Madden, the supreme court of appeals observed that "It is the purpose of the crime-fraud exception to the attorney-client privilege to assure that the 'seal of secrecy' . . . between lawyer and client does not extend to communications 'made for the purpose of getting advice for the commission of a fraud' or crime." Id. at 717, 601 S.E.2d at 37 (quoting Zolin, 491 U.S. at 563) (other citations omitted). The West Virginia court further observed that "[i]n the context of

> 'the crime/fraud exception to the lawyer-client
> privilege, "fraud" would include the commission and/or
> attempted commission of fraud on the court or on a
> third person, as well as common law fraud and criminal
> fraud. The crime/fraud exception comes into play when
> a prospective client seeks the assistance of an

---

⁵(...continued)
Virginia.

>   attorney in order to make a false statement or
>   statements of material fact or law to a third person or
>   the court for personal advantage.'
>
>   [Additionally] . . . , '"[t]he client need not succeed
>   in committing the intended crime or fraud in order to
>   forfeit the attorney-client privilege. <u>The dispositive
>   question is whether the attorney-client communications
>   are part of the client's effort to commit a crime or
>   perpetrate a fraud</u>."'

<u>Madden</u>, 215 W. Va. at 717, 601 S.E.2d at 37 (emphasis added) (quoting <u>Medical Assurance</u>, 213 W. Va. at 473, 583 S.E.2d at 96 (Davis, J., concurring) (additional quoted authority omitted).

Inasmuch as it is central to determining the applicability of the exception, the court quotes at length the remaining guidelines offered in <u>Madden</u>:

>   Once a determination has been made to conduct <u>in
>   camera</u> proceedings, the party opposing the privilege
>   may prevail only where the evidence establishes that
>   <u>the client intended to perpetrate a [crime or] fraud</u>.
>   The evidence proffered by the party seeking disclosure
>   must also permit the court to find <u>a valid relationship
>   between the confidential communication that was made
>   and the crime or fraud</u>.
>
>   The crime-fraud exception operates to compel disclosure
>   of otherwise privileged materials <u>only when the
>   evidence establishes that the client intended to
>   perpetrate a crime or fraud and that the confidential
>   communications between the attorney and client were
>   made in furtherance of such crime or fraud</u>.

<u>Madden</u>, 215 W. Va. at 718-719, 601 S.E.2d at 38-39 (internal quotations and citations omitted) (emphasis added).

17

As noted, document 81 was created in December 1997, months after publication of the McGowan letter and execution of the Novation Agreement between the parties. As indicated by <u>Madden</u>, however, the crime fraud exception applies only when the client intended to perpetrate a crime or fraud, at the time of the communication or prospectively, and that the confidential discussions were had to further the nefarious act. This is consistent with federal case law suggesting that a client recounting past misdeeds to his lawyer is commonly protected by the privilege and beyond the scope of the exception. <u>Sandberg v. Virginia Bankshares, Inc.</u>, 979 F.2d 332, 353 (4th Cir. 1992), <u>subseq. panel op. vacated on other grounds</u>, 1993 WL 524680 (4th Cir. Apr. 7, 1993) ("Communications seeking legal advice regarding past crimes or fraud are, however, privileged."); <u>see also</u> <u>In re Green Grand Jury Proceedings</u>, 492 F.3d 976, 979 (8th Cir. 2007)("Accordingly, we have recognized that, under the crime-fraud exception, '"[a]ttorney-client communications lose their privileged character when the lawyer is consulted not with respect to past wrongdoings but rather to further a continuing or contemplated criminal fraud or scheme."'")(citations omitted); <u>In re Grand Jury Subpoena</u>, 419 F.3d 329, 339 (5th Cir. 2005)("Clients must 'be free to make full disclosure to their attorneys of past wrongdoings . . . in order that the client may

obtain the aid of persons having knowledge of the law and skilled in its practice.'" (quoting Zolin, 491 U.S. at 562 (internal quotation marks and citations omitted).

Inasmuch as document 81 does not involve the type of present or prospective disclosure or planning of a contemplated crime, it need not be disclosed. The court, accordingly, ORDERS that the appealed order be, and it hereby is, reversed. Document 81 is deemed protected in its entirety by the attorney-client privilege and the crime fraud exception does not apply to it.[6]

It is further ORDERED that the parties be, and they hereby are, directed to appear for a status and scheduling conference on March 3, 2010, at 11:00 a.m. Absent any objection, it is further the court's intention, no later than March 1, 2010, to file on the public docket the following letters sent previously to the magistrate judge:

1. The February 27, 2003, letter authored by David K. Hendrickson;

2. The February 27, 2003, letter authored by Pamela C.

---

[6]The court does not reach Continental's additional concern respecting application of the crime fraud exception to "potentially other privileged documents." (Objec. at 9). The court has analyzed the exception only as it relates to document 81.

19

Deem;

3. The March 25, 2003, letter authored by Kathy A. Brown.

It is further ORDERED that the transcript of Campbell's *ex* *parte* examination be, and it hereby is, filed this same day under seal.

The clerk is directed to forward copies of this written opinion and order to all counsel of record.

DATE: February 23, 2010

_____
John T. Copenhaver, Jr.
United States District Judge